UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dennis James Moore, Jr.,

        Petitioner,

Commissioner of Corrections,

        Respondent.

Civil No. 09-2060 (JRT/FLN)

**REPORT AND RECOMMENDATION**

_____

Dennis James Moore, Jr., *pro se*, for Petitioner.
Joan Fabian for Respondent.
_____

    **THIS MATTER** came before the undersigned United States Magistrate Judge on the Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Respondent filed a response in opposition to the petition. (Doc. No. 7.) The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, this Court recommends that the petition be **DENIED**.

## I.  BACKGROUND

    Petitioner Dennis James Moore, Jr., a parolee in custody of the State of Minnesota, was charged with two counts of first-degree criminal sexual conduct and one count each of kidnapping, attempted first-degree murder, attempted second-degree murder, and first-degree

assault.[1] *State v. Moore*, 2005 WL 1153265 at *1 (Minn. App. 2005).  The undersigned accepts

the facts as stated by the Minnesota Court of Appeals:

> Dennis Moore was charged with several offenses arising out of a physical
> altercation with N.F. on May 5, 2003. According to N.F., she returned to her
> apartment to find Moore, her then boyfriend of nine months, waiting for her. The
> parties discussed ending their relationship. Moore hit N.F. twice, each time
> knocking her to the floor.
>
> Moore then dragged N.F. down to the basement where he tied her wrists with a
> clothesline. When N.F. began to scream, Moore threatened to put a sock in her
> mouth. Moore then tied a clothesline around N.F.'s neck, forced N.F. to stand on a
> chair, and attached the line to a beam in the ceiling. N.F. lost consciousness.
> When she regained consciousness, N.F. was on the basement floor with her wrists
> and neck still bound. Moore then undressed N.F., inserted a garden hose into her
> vagina, and turned the hose on. After removing the hose, Moore orally penetrated
> N.F. Moore then untied N.F., brought her upstairs, and demanded to engage in
> sexual intercourse with her. Out of fear, N.F. did not resist.
>
> Moore offers a markedly different version of the facts. Moore admits tying N.F.'s
> wrists and neck but contends that N.F. inflicted her own injuries by pressing the
> clothesline to her neck. Moore also maintains that N.F. forced him to perform oral
> sex on her and demanded that he give her a bath. Moore contends that N.F.'s
> explanation for her injuries is false.
>
> The day after the incident, N.F. sought medical attention. Her physician
> determined that she had large areas of subconjunctival hemorrhages in both eyes
> and evidence of strangulation, which included a linear rope burn on her neck. N.F.
> also had visible bruises on her neck and wrists.

*Id.*

Moore entered a plea of guilty to the charge of first-degree assault, and the state agreed to

dismiss the remaining charges pursuant to the plea agreement. *Id.*  In support of his guilty plea,

Moore testified that:

> On May 5, 2003, he intentionally placed a clothesline around N.F.'s neck and "at

---

[1] The requirement that the petitioner be in custody under the federal habeas corpus statute is satisfied by the fact that
the petitioner is released on parole. *Jones v. Cunningham*, 371 U.S. 236, 242 (1963).

some point during the evening" the clothesline tightened. The tightening of the clothesline caused blood vessels in N.F.'s eyes to burst, her eyes to hemorrhage, and scarring on her neck. The strangulation also caused numbness in her left arm that persisted until early November 2003.

*Id.* at *2. Moore was initially sentenced to 135 months of imprisonment by the district court, but his sentence was later reversed by the Minnesota Court of Appeals. *Moore v. Fabian*, 2008 WL 4552798 at *1 (Minn. App. 2008) (citing *Blakely v. Washington*, 542 U.S. 296 (2004)). On remand, the district court sentenced Moore to 115 months of imprisonment. *Id.* Moore was also required to register as a predatory offender under Minn. Stat. § 243.166 (2004). *Id.*

Upon his arrival at Minnesota Correctional Facility-St. Cloud, Moore was referred by the Department of Corrections' Program Review Team (PRT) to "complete the treatment recommendations of a ... sex offender treatment professional" because he was originally charged with 1st degree criminal sexual conduct. (Pet'r's App. Q-1 at 108, Doc. No. 2-3.) At the initial PRT, Moore was told that he was required to register as a Predatory Offender. *Id.* A Department of Corrections (DOC) therapist reviewed Moore's file and concluded that he should participate in a sex offender treatment program at the Minnesota Correctional Facility-Lino Lakes based on the complaint and Moore's admissions. (Pet'r's App. Q-1 at 108, Doc. No. 2-3.); *Moore*, 2008 WL 4552798 at *1. On January 5, 2007, Moore was seen by the Sex Offender Treatment Program-Lino Lakes Interview Team for possible admission to the treatment program. (Pet'r's App. Q-1 at 108, Doc. No. 2-3.) The Team decided not to accept Moore for admission because he denied sexually abusing the victim. *Id.* On January 11, 2007, Moore was provided notice that he committed a major violation of DOC Offender Disciplinary Regulations due to his failure to be admitted to the treatment program. *Moore*, 2008 WL 4552798 at *1; (Pet'r's App. Q-1 at 108, Doc. No. 2-3.) On January 26, 2007, Moore was afforded a disciplinary hearing.

*Moore*, 2008 WL 4552798 at *1. After the hearing, Moore was given an extended incarceration term of 45 days as a consequence of his violation. *Id.* Moore appealed the decision to the associate warden, who affirmed the 45-day penalty. *Id.*

On August 6, 2009, Petitioner filed the instant petition seeking federal habeas corpus relief. The thrust of Moore's petition asserts two complaints: (1) that he was denied due process by being classified as a "sex-offender" and by being ordered to complete a sex-offender treatment program when he has never been convicted of a sexual offense; (2) that he was denied due process when he was given an extended incarceration term of 45 days as a consequence of refusing sex offender treatment. (Doc. No. 1.) For the reasons discussed below, this Court concludes that Petitioner is not entitled to relief on either of these grounds.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus claims raised by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merit in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court in *Williams* held that:

> A state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's

precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours....

Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id*. at 405, 413. The Court further explained the "unreasonable application" clause:

A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. 529 U.S. at 409, 411.

A writ of habeas corpus may also be available where the state courts' resolution of a case is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the state court's judgment is based on findings of facts that could not reasonably be derived from the evidentiary record. When reviewing a state court's decision, however, a "federal court . . . presumes that the state court's factual determinations are correct," and that presumption "maybe rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own *de novo* review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. 28 U.S.C § 2254 (e)(1). Moreover, petitioner must show that the state courts committed the type of

error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*.

## III. DISCUSSION

### A. Exhaustion of State Court Remedies

A federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless he has exhausted all available state court remedies. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The requirement that a petitioner must exhaust state remedies is based upon principles of comity, federalism, and the administration of justice. *Williams v. Norris*, 576 F.3d 850, 860 (8th Cir. 2009) (citing *Williams v. Taylor*, 529 U.S. 420, 437 (2000)). State courts must be provided a fair opportunity to correct alleged violations of its prisoners' federal constitutional rights. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Smittie v. Lockhart*, 843 F.2d 295, 297 (8th Cir. 1988); *Barry v. Sigler*, 373 F.2d 835, 838 (8th Cir. 1967). A petitioner has not exhausted his state court remedies unless he has raised all of his claims to the highest available state court. *O'Sullivan*, 526 U.S. at 845 (concluding that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *see also Akins v. Kenney*, 410 F.3d 451, 454 (2005).

Moore's four grounds for relief in his federal habeas petition were clearly adjudicated on the merits by Minnesota's highest available state court. The state district court, the Minnesota Court of Appeals, and the Minnesota Supreme Court have had an opportunity to hear and correct alleged violations of Moore's federal constitutional rights. Therefore, the Court finds that the instant petition for habeas corpus may properly be considered because the petitioner has exhausted all available state court remedies.

## B. Due Process

### 1. Moore's Classification as a Sex Offender and the Order that he Complete a Sex-Offender Treatment Program did not give rise to a Protected Liberty Interest upon which he could base his Due Process Claim.

Moore first alleges that he was denied due process by being classified as a "sex-offender" and by being ordered to complete a sex-offender treatment program when he has never been convicted of a sexual offense. (Doc. No. 1.)  To establish a due process violation, Moore must first identify a liberty interest which is protected by the Due Process Clause of the United States Constitution.  *Meachum v. Fano*, 427 U.S. 215, 223 (1976); *Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997).  A liberty interest may arise either from the Due Process Clause or from state law.  *Sandin v. Conner,* 515 U.S. 472, 477-78, 479 n. 4 (1995) (citing *Vitek v. Jones,* 445 U.S. 480, 493-94 (1980)).  A "liberty interest" in the prison context "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless, imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.

First, the Court examines the policy under which a prisoner is classified as a sex offender.  In Minnesota, the Commissioner of Corrections has the statutory authority to "prescribe reasonable conditions and rules for [committed persons'] . . . conduct, instruction, and discipline within or outside the facility."  Minn. Stat. § 241.01, subd. 3a(b) (2006).  In addition, the Commissioner must establish rules regarding sex offender treatment programs.  Minn. Stat. § 241.67 (2006).  In accordance with this mandate, the Commissioner promulgated the Minnesota Department of Corrections (DOC) Division Directive 203.013, which provides procedures for Program Review Teams (PRT) to identify adult sex offenders and to direct them to participate in

rehabilitative programming. Directive 203.013 defines a "sex offender" as "an offender who is subject to predatory offender registration, or has a prior charge or conviction for an offense that was sex related or self-reports an incident or pattern of sexually assaultive behavior."

Moore challenges the state court's holding that his due process rights were not violated by the DOC's decision to classify him as a sex offender and the DOC's decision to order that he complete sex offender treatment although he has never been convicted of a sexual offense. [2] (Doc. No. 1.) In *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976), the United States Supreme Court concluded that discretionary prisoner classification and eligibility for rehabilitative programs do not give rise to due process protections. Furthermore, the Eighth Circuit has held that the stigma attached with classifying a prisoner as a sex offender, without more, does not implicate a liberty interest protected by the Due Process Clause. *Wilks v. Mundt*, 2002 WL 113837 (8th Cir. 2002), cert. denied, 540 U.S. 1124(2004) (citing *Moody*, 429 U.S. at 88 n. 9); *see also Gunderson v. Hvass*, 339 F. 3d 639, 644 (8th Cir. 2003) (rejecting plaintiff's procedural due process claims that his reputation has been injured by requiring him to register as a predatory offender even though he had not been convicted of a predatory offense). Further, the Court in *Green v. Bureau of Prisons,* 2002 WL 32619483 (D. Minn. 2002) (Tunheim, J.) denied a prisoner's petition for writ of habeas corpus for failing to identify a liberty interest at stake where he claimed due process violations based on the fact that he was "labeled a sex offender even though he was not convicted of a sexual offense." 2002 WL 32619483 at *1. Considering the

---

[2] It is unclear if Moore squarely raises the issue of whether he was denied due process by being required to register as a predatory offender under Minn. Stat. § 243.166 although he has not been convicted of a sexual offense. Nonetheless, in *Gunderson v. Hvass*, the Eighth Circuit has held that Minnesota's predatory offender statute is non-punitive in nature and thus, does not implicate a fundamental right. *Gunderson*, 339 F. 3d at 643. Further, the Eighth Circuit noted that although "the statute would require registration of a person accused of both a predatory offense and a non-predatory offense arising out of the same set of circumstances who exercised his right to a trial and was acquitted of the predatory offense but convicted of the non-predatory one," there are no constitutional barriers to the legislature's decision. *Id.* at 645.

above-described federal court decisions, this Court cannot conclude that the state court's decision relating to Moore's classification as a sex-offender and the order that he complete a sex-offender treatment program "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Additionally, the Court cannot conclude that the Minnesota Court of Appeal's decision, relating to Moore's sex offender designation and the requirement that he complete a sex offender treatment program, was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). The Minnesota Court of Appeals noted that Moore's conduct is within the scope of the definition of a "sex offender" as defined in Directive 203.13, stating:

> Appellant was charged with two counts of first-degree criminal sexual conduct and is subject to registration as a predatory offender under Minn. Stat. § 243.166, subd. 1(1), because he pleaded guilty to first-degree assault arising from the same set of circumstances. Because he is subject to predatory-offender registration, and thus within the directive's definition of a "sex offender," the DOC has the statutory authority to direct appellant to undergo treatment.

*Moore v. Fabian*, 2008 WL 4552798, at *3 (Minn. App. 2008). Moreover, the Minnesota Court of Appeals pointed out that Moore's conviction was clearly sex-related because "under . . . [his] own version of the events, he had sex with N.F. on the same evening that he tried to strangle her with the clothesline." *Id.* at *3 n.1. Thus, the Minnesota Court of Appeals correctly concluded that under Directive 203.13, Moore's classification as a sex offender and the order that he complete a sex-offender treatment program could have been based on either his prior charge for first-degree criminal sexual conduct or on his first-degree assault conviction that was sex related. *Id.* Moreover, in *Green*, the court noted that the petitioner's classification as a sex offender was "actually based on information connected with the crime to which he pled guilty." 2002 WL

32619483 at *4. Likewise, Moore's designation as a sex offender was based on information related to the same set of circumstances as his first-degree assault conviction.

Finally, even if Moore's classification as a sex offender and the requirement that he complete a sex offender treatment program had implicated a protected liberty interest, Moore failed to avail himself of the prison disciplinary grievance procedures under Offender Discipline Regulations (ODR) 510. *Id*. at *6. For that reason, the Minnesota Court of Appeals declined to address the issue of whether these procedures would have satisfied due process requirements. *Id*. This Court similarly declines to address the question of whether the prison's disciplinary grievance procedures complied with due process requirements. Thus, the Court concludes that to the extent Moore's petition is based on his classification as a sex-offender and the order that he complete a sex-offender treatment program, the petition must be denied.

### 2. Moore has a Liberty Interest in his Supervised Release Date that Triggers a Right to Procedural Due Process Before that Date can be Extended.

Next, the Court will address Moore's second complaint, which is that he was denied due process when he was given an extended incarceration term of 45 days as a consequence of not being accepted into sex offender treatment. (Doc. No. 1.) The "dispositive characteristic" of a liberty interest protected by the Due Process Clause "is the fact of release from incarceration." *Green*, 2002 WL 32619483 at *3 (citing *Callender v. Sioux City Residential Treatment Facility*, 88 F. 3d 666, 668 (8th Cir. 1996)). The Supreme Court has held that an inmate does not have a protected liberty interest in the possibility of parole release under the federal constitution. *Greenholtz v. Inmates of Nebraska Penal & Corrections,* 442 U.S. 1, 9-11 (1979); *Nolan v. Thompson*, 521 F. 3d 983 (8th Cir. 2008); *Adams v. Agniel,* 405 F.3d 643, 645 (8th Cir. 2005). Nevertheless, states can create a constitutionally protected liberty interest in parole by statute.

*Patten v. North Dakota Parole Bd.*, 783 F.2d 140, 142 (8th Cir. 1986) (citing *Greenholtz,* 442 U.S. at 7-11; *Parker v. Corrothers,* 750 F.2d 653, 655 (8th Cir. 1984)).  In *Parker*, the Eighth Circuit set forth a two-prong test to determine whether a state statute creates a protected liberty interest in parole:  (1) whether the statute contains "particularized substantive standards or criteria which significantly guide parole decisions;" and (2) whether the statute contains mandatory language. 750 F.2d at 656; *see also Bagley v. Rogerson*, 5 F.3d 325, 328-29 (8th Cir. 1993) (internal citations omitted) (stating that a liberty interest in parole is not created "unless the state statute or regulation involved uses mandatory language and imposes substantive limits on the discretion of state officials").

Under Minnesota's statutory scheme, "there is a presumption from the moment that a court imposes and explains the sentence that the inmate will be released from prison on a certain date and that presumption is overcome only if the inmate commits a disciplinary offense." *Carrillo v. Fabian*, 701 N.W.2d 763, 772 (Minn. 2005) (holding that there was a protected liberty interest at stake where inmate's date of release from prison was extended by seven days after Commissioner found that inmate had committed a disciplinary offense); *see also State ex rel. Marlowe v. Fabian*, 755 N.W.2d 792, 794 (Minn. App. 2008) (concluding that "an inmate in Minnesota has a liberty interest in his or her supervised release date that is protected by due process"). Thus, Moore has a protected liberty interest in his supervised release date that entitled him to procedural due process before his date of supervised release could be extended.  *Carrillo*, 701 N.W.2d at 773.

**i. Moore was afforded procedural due process in the prison disciplinary hearing.**

The Court must consider whether Moore was afforded constitutionally sufficient procedural protections before he was deprived of his liberty interest in his supervised release date. To satisfy the procedural due process requirements for prison discipline, Moore was entitled:

> (1) to advance written notice of the claimed violation at least 24 hours before the disciplinary hearing; (2) to call witnesses and to present documentary evidence in his defense if doing so will not jeopardize institutional safety or correctional goals; and (3) to receive a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary action.

*Hrbek v. Nix*, 12 F.3d 777, 780-81 (8th Cir. 1993) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974)). With respect to the standard of proof at a prison disciplinary proceeding, due process of law requires that a prison disciplinary board establish its factual determinations at the disciplinary hearings using "some evidence" as the standard of proof. *Goff v. Dailey*, 991 F.2d 1437, 1440 (8th Cir. 1993). Minnesota's regulations, however, provide for a higher standard by requiring that "a DOC hearing officer must find by a preponderance of the evidence that . . . [an inmate] has committed a disciplinary offense before the commissioner can extend the date of his supervised release." *Carrillo*, 701 N.W.2d at 777.

In this case, Moore was afforded a "major disciplinary hearing" pursuant to DOC Directive 303.10. *Moore*, 2008 WL 4552798 at *8. Moore's violation was considered a "major penalty" due to the possibility of extended incarceration. *Id*. at *8. In accordance with the DOC rules for a "major violation hearing process," Moore was afforded:

> (1) notice of his alleged violation, including a brief written summary of the facts of the incident and notice of his right to call witnesses; (2) the right to be present at his hearing; (3) representation provided by the DOC; (4) the right to call witnesses on his own behalf; (5) the right to present relevant physical evidence; (6) written findings made available to him explaining, under a preponderance of the evidence standard, the hearing officer's decision and the penalty to be imposed

upon him; and (7) the right to appeal the decision to the prison's warden or the warden's designee.

*Id*.; (DOC Directive 303.10, Appendix B, Doc. No. 3.)  The Minnesota Court of Appeals correctly concluded that Moore was afforded greater procedural protections than those required in *Hrbek* and *Wolff*.  As a result, this Court cannot conclude that the state court's decision that Moore was afforded minimum procedural due process requirements is contrary to, or an unreasonable application of, clearly established Federal law.

Further, this Court cannot conclude that state court's decision that Moore was not deprived of his due process rights during the disciplinary hearing was based on an unreasonable determination of the facts.  In this case, the Commissioner has the authority to impose disciplinary sanctions on any inmate that refuses to participate in rehabilitative programs.  Minn. Stat. § 244.03 (2006).  In addition, the Commissioner is not required to accept an offender into a treatment program "if the offender is determined by prison professionals as unamenable to programming within the prison system or if the offender refuses or fails to comply with the program's requirements." Minn.Stat. § 241.67, subd. 3(a) (2006).  Moreover, "no inmate who violates a disciplinary rule or refuses to participate in a rehabilitative program as required under section 244.03 shall be placed on supervised release until the inmate has served the disciplinary confinement period for that disciplinary sanction."  Minn.Stat. § 244.05, subd. 1b(b) (2006). ODR 510 provides that refusal to participate in treatment is considered a disciplinary offense. *Moore*, 2008 WL 4552798 at *3.  If an offender is found to be unamenable to treatment, this finding constitutes a violation of ODR 510.  *Id*.

DOC staff considered Moore to be unamenable to treatment and in violation of ODR 510 because he refused to admit that he sexually assaulted N.F.  *Id*. at *3.  This Court is persuaded by

the Minnesota Court of Appeals' conclusion that Moore's argument that "he did not sexually assault his victim," but rather "just assaulted her and then had sex with her" failed to undermine the DOC's decision that he was in need of sex offender treatment.[3] *Id.* Accordingly, the Court concludes that Moore's allegation that he was denied due process when he was given an extended incarceration term of 45 days as a consequence of not being accepted into sex offender treatment is an insufficient basis for habeas relief.

In sum, the Court cannot conclude that the state courts' decision was contrary to, or involved an unreasonable application of, clearly established federal law. Nor was the state courts' decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, Moore is not entitled to federal habeas relief on any of the grounds set forth in his petition.

## IV. RECOMMENDATION

Based on all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. No. 1) be **DENIED.** It is further recommended, pursuant to 28 U.S.C. § 2253(c), that a Certificate of Appealability not be issued because Petitioner has failed to make a substantial showing of the denial of any constitutional right.

DATED: June 4, 2010                                  *s/ Franklin L. Noel*
                                                     FRANKLIN L. NOEL
                                                     United States Magistrate Judge

---

[3] Moore claims that he has never admitted to any sexual contact with the alleged victim and that his appellate counsel erroneously incorporated this fact into his appeals brief. (Doc. No. 1.) However, a charge for a sexual offense constitutes a sufficient independent basis for classifying an individual as a sex offender. *Green*, 2002 WL 32619483, at *1.

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 21, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a *de novo* determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.